# In the United States Court of Federal Claims

No. 13-455L

(E-Filed:  September 17, 2015)

|  |  |
|---|---|
| GERALD E. BELL, et al., | ) |
| | ) |
| | ) Class Certification; RCFC 23; |
| Plaintiffs, | ) Size of the Individual Claims |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Kimberli D. Loessin, Houston, Tex., for plaintiffs.

John P. Tustin, with whom were Sam Hirsch, Acting Assistant Attorney General, Environment & Natural Resources Division, Civil Division, United States Department of Justice, Washington, D.C., for defendant.  Blake K. Harden, Attorney (Trade & Finance Section), Office of Chief Counsel, U.S. Customs and Border Protection, of counsel.

## OPINION and ORDER

CAMPBELL-SMITH, Chief Judge

This is an inverse condemnation matter brought by six named plaintiffs against the United States International Boundary and Water Commission (defendant or the government).  Plaintiffs seek just compensation under the Takings Clause of the Fifth Amendment of the United States Constitution for defendant's alleged physical taking of their property.

Plaintiffs own real property in the state of Texas, along the Mexican border, near the Rio Grande River.  It is undisputed that defendant holds easements that entitle it to build and maintain a structure on plaintiffs' property for the purpose of flood control. What is disputed is whether the structure built by defendant falls within the scope of the easements it holds.  Plaintiffs argue that defendant's structure is a "border fence" that falls outside the scope of the easements and thus, has effected an uncompensated taking of their property.  Defendant acknowledges that the structure serves the dual purposes of

1

flood control and border defense, but maintains that the structure nonetheless falls within the scope of the easements.  Defendant contends that no taking has occurred.

Before the court is plaintiffs' fully briefed motion for class certification under Rule 23 of the Rules of the U.S. Court of Federal Claims (RCFC).  The court did not hear oral argument.  For the reasons explained below, plaintiffs' motion is **DENIED**.

I.     Background

Plaintiffs are six individuals or entities[1] who own "real property in Hidalgo County, Texas along, at or near the Rio Grande River and the border between Mexico and the United States."  Compl. 1, ¶ 2, ECF No. 1.  Plaintiffs allege that defendant built a structure on their property, "leaving considerable acreage on the 'river' or 'Mexican' side of the border fence significantly impacting Plaintiffs' access."  Id.  Plaintiffs acknowledge that their predecessors in interest "granted revetment and levee easements to the County of either Hidalgo or Cameron ("County"), granting the County the perpetual right and easement to construct, operate, and maintain suitable levees for flood control purposes on their land."  Id. ¶ 10.  According to plaintiffs, "the County [later] granted easements to the United States," which are "limited to the same flood control purposes as the original Revetment & Levee Easements."  Id. ¶ 11.

Plaintiffs allege that defendant began construction of a border fence in 2009 or 2010, "made up of a concrete structure approximately 13 feet tall with long steel bollards installed on top of the concrete base.  The steel bollards are approximately 6 inches in diameter and are spaced approximately 6 inches apart.  The border fence extends across and/or along Plaintiffs' properties."  Id. ¶ 13.  Plaintiffs allege that the structure now on their property exceeds the limits of the easements defendant holds and constitutes an uncompensated taking.  Id. ¶ 15.

Defendant acknowledges that the structure is a "joint structure" erected by both Hidalgo County and the U.S. Department of Homeland Security for both flood control and border defense purposes.  Answer ¶ 13, ECF No. 10.  Defendant denies that it has committed a taking of plaintiffs' property.  Id. ¶ 15.

Plaintiffs filed a motion for class certification, seeking to represent all others "who hold property interests in [the] land underlying the border fence infrastructure built by the

---

[1]     The six named plaintiffs are:  (1) Gerald E. Bell, (2) Duane V. Bell, (3) Joe Metz, individually, and (4) Joe Metz as Testamentary Trustee of the Trust Created in the Last Will and Testament of Thomas B. Waite (Trustee of the Waite Trust), (5) Neuhaus & Sons, a Texas General Partnership, and (6) Bell Brothers, a Texas General Partnership.  Compl. 1, ECF No. 1.

Defendant along an approximate 22-mile stretch of land in Hidalgo County, Texas on the existing flood control levee currently maintained and operated by the U.S. International Boundary & Water Commission."  Pls.' Mot. 1, May 15, 2014, ECF No. 25-1.

Plaintiffs conducted an "initial investigation using the central appraisal district records . . . [which] indicated that there are at least 60 potential claimants."  Id. at 13.  Plaintiffs filed this list of sixty potential class members, holding seventy-six parcels of land, as Exhibit G to their motion.  See Ex. G, ECF No. 25-14.  Review of Exhibit G shows that for each parcel of land, plaintiffs provided the parcel number, parcel address, the owner's name and mailing address, the number of acres, and the use to which the parcel is being put, for example, pasture, farm, residential, or preserve.  See id.

Defendant filed its response in opposition, Def.'s Resp., July 15, 2014, ECF No. 28, and plaintiffs filed a reply, Pls.' Reply, Sept. 5, 2014, ECF No. 31.  The matter is ripe for a ruling.

II.     Legal Standard

Class action suits in the Court of Federal Claims are governed by Rule 23, under which a member of the class may sue as a representative party on behalf of other members only if the following prerequisites are met:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

RCFC 23(a).

These requirements are conjunctive; the failure to satisfy any single requirement will defeat class certification.  See id.; see also 7A Charles Alan Wright et al., Federal Practice & Procedure § 1759, Westlaw (database updated Apr. 2015) ("The party who is invoking Rule 23 has the burden of showing that all of the prerequisites to utilizing the class-action procedure have been satisfied.").

In addition, in order to maintain the class, plaintiffs must show that:

> (1) [not used];
> (2) the United States has acted or refused to act on grounds generally applicable to the class; and

(3) . . . that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by class members;
> (C) [not used]; and
> (D) the likely difficulties in managing a class action.

RCFC 23(b).

Class certification is at the discretion of the trial court.  See Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011); Consol. Edison Co. of N.Y., Inc. v. Richardson, 233 F.3d 1376, 1379 (Fed. Cir. 2000); Jones v. United States, 118 Fed. Cl. 728, 732 (2014).  The movant must satisfy each requirement by a preponderance of the evidence. See, e.g., Geneva Rock Prods., Inc. v. United States, 100 Fed. Cl. 778, 782 (2011).

III.    Discussion

A.      Rule 23(a)(1) – Impracticability of Joinder

The first prerequisite requires that "the class is so numerous that joinder of all members is impracticable."  RCFC 23(a)(1).  "Practicability of joinder depends on the size of the class, the ease of identifying its members and determining their addresses, the facility of making service on them if joined and their geographic dispersion."  Jaynes v. United States, No. 04-856, 2005 WL 6112634, at *4 (Fed. Cl. Aug. 19, 2005); see also Gross v. United States, 106 Fed. Cl. 369, 374 (2012) (explaining that the number of potential class members and their geographic dispersal are Rule 23(a)(1) considerations); Fauvergue v. United States, 86 Fed. Cl. 82, 97 (2009) (same), rev'd on other grounds sub nom., Bright v. United States, 603 F.3d 1273 (Fed. Cir. 2010).

Plaintiffs assert they have satisfied this factor for three reasons: (1) the potential class of sixty is sufficiently large; (2) the members of the proposed class are readily identifiable through property tax records and easily reachable through specific notice; and (3) many individual claims are likely unprofitable as individual actions, due to the small tracts of land involved.  Pls.' Mot. 14-16.

Defendant responds that this court has denied class certification in cases with more than sixty potential class members, and that a proposed class with members who are

readily identifiable and geographically proximate supports a finding that joinder is practicable.  Def.'s Resp. 6-9.  Finally, defendant takes the position that consideration of the size of the individual claims belongs in the court's Rule 23(b)(3) superiority evaluation, not in its Rule 23(a)(1) impracticability of joinder evaluation.  Id. at 17-18, 17 n.10.

1.      Size of the Individual Claims

Plaintiffs take the position that this factor is part of the court's Rule 23(a)(1) numerosity evaluation, while defendant asserts it is part of the Rule 23(b)(3) superiority evaluation.  See Pls.' Mot. 14-15; Def.'s Resp. 17 n.10 (citing Rasmuson v. United States, 91 Fed. Cl. 204, 216-17 (2010); Pls.' Reply 2-3 (citing Fauvergue, 86 Fed. Cl. at 97; Barnes v. United States, 68 Fed. Cl. 492, 499-500 (2005)).

Review of the authority upon which Rule 23 is based indicates that defendant is correct; the size of the individual claims is properly considered as part of the Rule 23(b)(3) superiority evaluation.  The court recognizes that there is some variation in the case law on this point, as shown by the parties' reliance on different cases to support their respective positions.  The court turns now to address the divergent points of view.

As the court's rules committee has explained, the current version of Rule 23 is based on criteria set forth in Quinault Allottee Ass'n v. United States and on Rule 23 of the Federal Rules of Civil Procedure (FRCP).

RCFC 23 has been completely rewritten.  Although the court's rule is modeled largely on the comparable FRCP, there are significant differences between the two rules.  In the main, the court's rule adopts the criteria for certifying and maintaining a class action as set forth in Quinault Allottee Ass'n v. United States, 197 Ct. Cl. 134, 453 F.2d 1272 (1972).

RCFC 23 rules committee's note to 2002 amendment.  The court also has said that "interpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure."  RCFC 2002 rules committee's note, at 1.  Thus, the court looks to both Quinault and to the Federal Rule 23 advisory committee notes for guidance on the proper consideration of the size of the individual claims.

In Quinault, the court set forth eight criteria it used in deciding class certification, including whether "the claims of many [plaintiffs] are so small that it is doubtful that they would be pursued other than through this case."[2]  Quinault, 453 F.2d at 1276 (criteria no.

_____

[2]      When Quinault was decided in 1972, this court's rules did not include specific criteria for use in deciding whether to certify a proposed class.  See Quinault, 453 F.2d at

vi).  While the court acknowledged in <u>Quinault</u> that it took its eight criteria from "the Rule 23 criteria," it did not specify whether it took this particular criterion from Rule 23(a) or Rule 23(b).  <u>See id.</u>  <u>Quinault</u> seems to confirm that size of the individual claims is a proper consideration in deciding class certification, but it provides no guidance on whether the court should consider it as part of its Rule 23(a)(1) or 23(b)(3) evaluation.

We turn now to the Federal Rule 23 advisory committee notes.  In its discussion of the portion of Rule 23(b)(3) that considers "the class members' interests in individually controlling the prosecution of separate actions," FRCP 23(b)(3)(A), the advisory committee explained,

> [t]he interests of individuals in conducting separate lawsuits may be so strong as to call for denial of a class action.  On the other hand, these interests may be theoretic rather than practical; the class may have a high degree of cohesion and prosecution of the action through representatives would be quite unobjectionable, or <u>the amounts at stake for individuals may be so small that separate suits would be impracticable</u>.

FRCP 23(b)(3) advisory committee's note to 1966 amendment (emphasis added).  The Federal Rule 23 advisory committee's notes indicate that the size of the individual claims is a consideration under RCFC 23(b)(3)(A), the superiority evaluation.

Several other court decisions, as well as two respected treatises, have reached the same conclusion.  <u>See</u> <u>Rasmuson</u>, 91 Fed. Cl. at 216-17 (considering size of the individual claims under Rule 23(b)(3), and listing cases); <u>Barnes</u>, 68 Fed. Cl. at 499-500 (considering "small recoveries" expected by plaintiffs in its Rule 23(b)(3) evaluation); 2 William B. Rubenstein, <u>Newberg on Class Actions</u> § 4:69, Westlaw (database updated June 2015) (stating that the FRCP advisory committee notes identify small claims as a reason that "individuals [would] have little interest in controlling their own litigation and hence that representative litigation is superior," under FRCP 23(b)(3)(A)); Wright et al., <u>supra</u>, §1780 (stating that in considering Rule 23(b)(3)(A), "[s]everal courts have held that the interest the individual members might have in controlling the defense or prosecution of separate suits is not important, if as a practical matter multiple actions would not be feasible because of the small amounts involved").

In reviewing the authority cited by plaintiffs, it appears that plaintiffs have misattributed a statement in the <u>Barnes</u> case.  According to plaintiffs, <u>Barnes</u> supports a finding that "[b]ecause the time and financial commitment involved in litigation can be

---

1275. ("[E]ven though present [FRCP] 23 has been in effect since 1966, [the Court of Federal Claims has] not adopted an analogue or parallel.  The practice in class suits (including the prescription of standards for giving actions that characterization) is still flexible and open in this forum.").

outweighed by the potential recovery, forming a class action may be the only method making litigation worthwhile." Pls.' Reply 2 (citing Barnes, 68 Fed. Cl. at 499-500). While the Barnes court did make this finding, it did so in its Rule 23(b)(3) superiority evaluation, not in its Rule 23(a)(1) numerosity evaluation.  See Barnes, 68 Fed. Cl. at 499 ("Like its federal rule counterpart, RCFC 23(b) provides a nonexhaustive list of factors pertinent to the superiority criterion . . . . First, as identified in Quinault, the small recoveries expected to be received by these individuals . . . .").

Review of other decisions in this court taking the position that the size of the individual claims should be considered as part of the numerosity evaluation under Rule 23(a)(1) shows a reliance similar to plaintiffs' on the Barnes case, or on King v. United States, a later case that followed Barnes.  See King v. United States, 84 Fed. Cl. 120, 125 (2008) ("The smaller the size of the claim and the larger the number of persons, the less likely it is that, without the benefit of a class action, any plaintiff will recover.") (citing Barnes, 68 Fed. Cl. at 499-500); Gross, 106 Fed. Cl. at 374-75 (considering "the size of each potential class member's claim" under Rule 23(a)(1) (citing King, 84 Fed. Cl. at 123-24)); Haggart v. United States, 89 Fed. Cl. 523, 530 (2009) (stating that "[t]he court determines whether numerosity is satisfied by analyzing several factors, including . . . the size of individual claims") (citing King, 84 Fed. Cl. at 123-24); Fauvergue, 86 Fed. Cl. at 97 ("Another factor utilized in determining numerosity is whether the size of the individual claims is such that, alone, class members would be discouraged from pursuing their claim.") (citing King, 84 Fed. Cl. at 125).

After having carefully considered plaintiffs' position, the court finds that the Quinault decision and the advisory committee's note to the 1966 amendment of Federal Rule 23(b)(3) invite contemplation of the size of the individual claims as part of Rule 23(b)(3)(A), rather than Rule 23(a)(1).  Accordingly, the court now evaluates the impracticability factor by considering only the number of potential class members, the ease of identifying the members, and their geographical proximity to one another and to the property in question.

2.      Number of Potential Class Members

Whether the number of plaintiffs surpasses a particular benchmark has served as a presumptive determinant of numerosity, in some cases.  See, e.g., King, 84 Fed. Cl. at 124 ("While not outcome determinative, the number of potential class members is persuasive when determining numerosity: generally, if there are more than forty potential class members, this prong has been met.") (citing Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001)).  However, the court here declines to adopt such a presumptive measure.  See, e.g., Jaynes v. United States, 69 Fed. Cl. 450, 454 (2006) (electing not "to formally adopt a 'presumption' approach to numerosity.").  The court takes the view that "[t]here is no set number of potential class members that must exist before a court can certify a class.  Instead, [the] court must examine the facts of the case to determine

whether the numerosity requirement has been satisfied." Gross, 106 Fed. Cl. at 374 (citing Gen. Tel. Co. of the Nw., Inc. v. EEOC, 446 U.S. 318, 330 (1980) ("The numerosity requirement [of FRCP 23(a)(1)] requires examination of the specific facts of each case and imposes no absolute limitations.")).

Plaintiffs argue that their sixty potential class members are sufficient to satisfy the numerosity requirement of Rule 23(a)(1), as this court has previously certified classes with as few as thirty members. Pls.' Mot. 13, 13 n.4 (citing Hubbert v. United States, 58 Fed. Cl. 613 (2003); Moore v. United States, 41 Fed. Cl. 394 (1998) (2000 potential claimants, 298 actual); Voth Oil Co. v. United States, 108 Fed. Cl. 98 (2012) (135 potential claimants; 41 actual)).

But, none of the decisions on which plaintiffs rely provide it with any support. Although Hubbert was filed as a class action by thirty plaintiffs, see Hubbert, 58 Fed. Cl. at 614, there is no indication on the case docket that the court ever certified the class, or that plaintiffs even moved for certification.  And in Moore and Voth Oil Co.—the potential classes, respectively 2000 and 135 potential claimants—were each significantly larger than the potential class at issue in this matter.

Defendant opposes plaintiffs' position, asserting that this court has "frequently" handled Trails Act takings actions "with larger putative classes than this one without certifying a class." Def.'s Resp. 8 (citing Dana R. Hodges Trust v. United States, No. 09-289 (Fed. Cl. filed May 7, 2009) (involving claims of more than 100 property owners on a 24.7-mile rail corridor); Winder v. United States, No. 08-324 (Fed. Cl. filed May 1, 2008) (four consolidated cases involving more than 100 parcels on a 15.93-mile rail corridor); Rogers v. United States, No. 07-273 (Fed. Cl. filed May 1, 2007) (involving claims of 317 plaintiffs on a 12.5-mile rail corridor)).

Defendant is correct that in the cited Winder case, the claims of approximately 102 named plaintiffs were considered after consolidating four separate actions.  See Notice of Related Cases at 2, Winder, No. 08-324 (Fed. Cl. July 8, 2008), ECF No. 15.  However, the Dana R. Hodges Trust and the Rogers cases do not provide defendant with support for the position it takes.

In Dana R. Hodges Trust, plaintiffs withdrew their motion to certify the class after the local press covered the case, prompting most of the proposed class to contact plaintiffs' counsel, and obviating the need for notice of class certification.  See Mot. Withdraw Pls.' Mot. Class Certification, Dana R. Hodges Trust, No. 09-289 (Fed. Cl. Jan. 25, 2010), ECF No. 28; Tr. at 10-11, Dana R. Hodges Trust, No. 09-289 (Fed. Cl. Dec. 23, 2009), ECF No. 27.  Whether the court would have certified this class is unknown.

In Rogers, plaintiffs sought decertification of the class of 317 opt-in plaintiffs due to uncertainty in the case law as to whether or not plaintiffs who joined the class after the expiration of the six-year statute of limitations on their claims would be deemed to have timely filed their actions.  See Pls.' Mot. Joinder ¶¶ 7-13, Rogers, No. 07-273 (Fed. Cl. Aug. 31, 2009), ECF No. 101.  At the time plaintiffs moved to decertify the class, an appeal was pending before the Federal Circuit in the matter of Fauvergue; in that case, the trial court had "ruled [that] the filing of a timely class-action complaint does not satisfy the 28 U.S.C. § 2501 six-year limitation period[, which] . . . continues to run even after the complaint is filed."  Id. ¶ 10 (citing Fauvergue, 86 Fed. Cl. 82).  Were the Federal Circuit to have affirmed Fauvergue,[3] some Rogers plaintiffs would have been ineligible for compensation, because they joined the class more than six-years after their claims had accrued.  See id. ¶ 12.  Plaintiffs ultimately elected to proceed by joinder solely to avoid the "uncertainty created by the Fauvergue opinion."  Id. ¶ 13.

On close examination, neither party has provided the court with relevant, persuasive authority in support of its position.  Review of the court's contested motions for class certification, in which Rule 20 joinder was possible, does not reveal proposed classes of similar size as plaintiff.  But review of the court's takings cases does provide some guidance.

Most similar to this case is Rasmuson v. United States, 91 Fed. Cl. 204 (2010).  Rasmuson was a rails-to-trails case with fifty-one potential class members, located along a 15-mile strip of land, asserting takings claims.  Id. at 212, 216.  The court declined to certify the proposed class, finding that plaintiffs had failed to show that RCFC 20 joinder of the potential class members was impracticable.  Id. at 217.  The court's decision was also influenced by factors to be addressed in further detail below.  Specifically, the court reasoned that because the "vast majority of potential plaintiffs reside in close geographic proximity to each other and the land at issue," and the identification of the potential class members—including those outside the immediate area—was  "readily available through a search of public records, . . . service of process on potential plaintiffs would [not] be impracticable."  Id. at 216.

Similar to the Rasmuson court, this court is not convinced that the joinder of sixty plaintiffs is necessarily impracticable.

3.      Geographic Proximity of Potential Class Members

"[W]hen the court finds that the class members are widely dispersed geographically, then their joinder may be deemed impracticable, whereas, depending on

---

[3]     The Federal Circuit reversed the trial court.  Bright v. United States, 603 F.3d 1273 (Fed. Cir. 2010), rev'g Fauvergue v. United States, 86 Fed. Cl. 82 (2009).

their numbers, class members located in a single geographic location may not meet the requirement."  Wright et al., supra, § 1762 (footnote omitted).

Plaintiffs state that the property in question falls along an approximately 22-mile strip of land.  Pls.' Mot. 1.  Plaintiffs add that "it is clear the vast majority [of potential class members] reside in the immediate area of the property in question while most others reside in Texas," id. at 13 (citing Taylor v. United States, 41 Fed. Cl. 440, 445 (1998); Moore, 41 Fed. Cl. at 397).  Plaintiffs rely on case law that predates the 2002 version of Rule 23 now in use, see supra Part III.A.1, but that earlier case law is of limited applicability.

Both Taylor and Moore considered the first of the Quinault criteria, specifically whether the proposed class was "large but manageable."  This inquiry included an evaluation of whether the potential class members were readily identifiable and easily provided with notice.  See Taylor, 41 Fed. Cl. at 445 (finding a potential class of 213 plaintiffs was manageable as plaintiffs were "linked through the Army and Air Force, and as a result, should not be difficult to reach"); Moore, 41 Fed. Cl. at 397-98 (finding a potential class of more than 2000 plaintiffs was manageable, where plaintiffs were "readily identifiable private landowners located in a defined geographic area, [thus] creat[ing] a situation amenable to providing notice").

The current version of Rule 23(a)(1) does not ask if the class is "manageable," and current case law interpreting Rule 23 considers the ready identification of potential class members and the easy provision of notice as favoring joinder, rather than class certification.  "'Joinder is considered more practicable when all members of the class are from the same geographic area.'  The same is true when class members are easily identifiable." Jaynes, 69 Fed. Cl. at 454 (quoting Andrews v. Bechtel Power Corp., 780 F.2d 124, 131-32 (1st Cir. 1985)); see also Rasmuson, 91 Fed. Cl. at 216; Fauvergue, 86 Fed. Cl. at 97.

Review of Exhibit G shows that of the sixty potential class members, all but two reside in Texas.  See Ex. G.  Further review shows that fifty of the potential class members live in thirteen cities in the McAllen-Edinburg-Mission area,[4] and review of a publicly available map[5] shows that these cites border an approximately 25-mile strip of land along U.S. Highway 83, which itself runs parallel to, and a few miles north of, the

---

[4]     The thirteen cities, together with the number of potential class members living in each city, are: Donna (1), Edinburg (4), Hidalgo (2), La Joya (2), Los Ebanos (3), McAllen (4), Mercedes (2), Mission (22), Palmview (2), Penitas (1), Progresso (3), Sullivan City (1), and Weslaco (3).

[5]     http://www.mapquest.com.

Rio Grande river.  One additional proposed plaintiff lives about fifteen miles to the east of this strip of land, in Harlington, Texas.

In summary, 97% (58/60) of potential class members live in the state of Texas, 83% (50/60) live within close proximity to the land at issue, and to each other, and 100% have been identified by plaintiffs.  See id.

As plaintiffs have indicated, the potential class members are readily identifiable and geographically proximate to each other and to the property in question.  The court finds that these factors militate in favor of joinder under Rule 20.

In the court's view, Rule 20 joinder in this matter is not impracticable,[6] and thus plaintiffs have failed to satisfy the requirement for Rule 23(a)(1).  This failure alone is sufficient to defeat plaintiffs' motion for class certification.  For the sake of completeness, however, the court addresses the other factors.

B.      Rule 23(a)(2) – Commonality

Plaintiffs must show that "there are questions of law or fact common to the class." RCFC 23(a)(2).  Plaintiffs' "claims must depend upon a common contention . . . . [that] must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Wal-Mart, 131 S. Ct. at 2551.  The purpose of the commonality requirement is to ensure "proposed classes are sufficiently cohesive to warrant adjudication by representation"; and "to prevent certification of a class that will 'degenerat[e] into a series of individual trials.'"  Fauvergue, 86 Fed. Cl. at 99 (quoting Barnes, 68 Fed. Cl. at 496).

---

[6]      Claims in this court must be brought within six-years after such claim first accrues.  28 U.S.C. § 2501 (2012).  The filing of a complaint on behalf of a class tolls the statute of limitations, which remains tolled until denial of a motion for class certification. Stone Container Corp. v. United States, 229 F.3d 1345, 1354-55 (Fed. Cir. 2000) (citing Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 354 (1983)).  "Tolling means 'that when a time bar has been suspended and then begins to run again upon a later event, the time remaining on the clock is calculated by subtracting from the full limitations period whatever time ran before the clock was stopped.'"  Abernathy v. United States, 108 Fed. Cl. 183, 187 (2012) (quoting United States v. Ibarra, 502 U.S. 1, 4 n.2 (1991)).  Plaintiffs who seek to join this matter under Rule 20 must satisfy the § 2501 statute of limitations. See, e.g., Lucree v. United States, 117 Fed. Cl. 750, 751 n.1 (2014) (stating that joinder of additional plaintiffs under Rule 20(a) was improper, as their claims were outside the six-year § 2501 statute of limitations), aff'd, 596 F. App'x. 922 (Fed. Cir. 2015).

Plaintiffs argue that a common question of law exists—in particular, whether the the structure on plaintiffs' property, as constructed, "exceed[s] the scope of the flood control easement" conveyed by either Hidalgo or Cameron County to defendant, and "thus effect[s] a taking in violation of the Fifth Amendment." Pls.' Mot. 16.

Defendant responds that plaintiffs "cannot overcome the numerous dissimilarities among their claims." Def.'s Resp. 11. Improperly elevating the standard under this subpart of Rule 23, defendant argues that plaintiffs have not shown "that common issues of law <u>and</u> fact <u>predominate</u> here." <u>Id.</u> at 10-11 (emphasis added). But, defendant makes no assertion that plaintiffs have failed to identify either a question of law or fact common to the class, which is all that is necessary to satisfy Rule 23(a)(2).

Courts have routinely found that the legal question of whether a taking has occurred serves to satisfy the commonality requirement. <u>See, e.g.</u>, <u>Geneva Rock Prods.</u>, 100 Fed. Cl. at 789 (finding commonality where the "issue is whether the NITU[7] . . . effected a taking of the class members' property"); <u>Douglas R. Bigelow Tr. v. United States</u>, 97 Fed. Cl. 674, 678 (2011) ("[A]ll plaintiffs share the same core legal question: did a Fifth Amendment taking occur when the NITU issued on July 29, 2003."); <u>Janssen v. United States</u>, No. 09-559, 2010 WL 697343, at *4 (Fed. Cl. Feb. 24, 2010) ("The common class legal question is whether the [two] NITUs . . . effected a Fifth Amendment taking of plaintiffs' and putative class members' property . . . .").

The determination of whether or not the structure erected by defendant on plaintiffs' properties exceeds the scope of the easements held by defendant is a common question of law. Plaintiffs have satisfied the commonality requirement for class certification.

C.     Rule 23(a)(3) – Typicality

The third prerequisite requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." RCFC 23(a)(3). "The representative party demonstrates typicality when 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" <u>Barnes</u>, 68 Fed. Cl. at 498 (quoting <u>In re Drexel Burnham Lambert Grp., Inc.</u>, 960 F.2d 285, 291 (2d Cir. 1992); <u>see also</u> 1 Rubenstein, <u>supra</u> § 3:29 ("A plaintiff's claim is typical if it arises from the same event, practice, or course of conduct that gives rise to the claims of other class members and if his or her claims are based on the same legal theory.")

---

[7]     A NITU, or Notice of Interim Trail Use or Abandonment, is issued by the U.S. Department of Transportation, Surface Transportation Board (STB).

Citing the <u>Moore</u> case, plaintiffs claim they satisfy this prong of Rule 23 "because [they] hold a compensable property interest in the land underlying the border fence infrastructure, have sued under the Tucker Act . . . and seek just compensation under the Fifth Amendment," as would "each putative class member." Pls.' Mot. 17 (citing <u>Moore</u>, 41 Fed. Cl. at 399). In <u>Moore</u>, the court found the typicality requirement to be satisfied where each named plaintiff and potential class member owned land encumbered by the government's structure, and brought suit under the Fifth Amendment for a taking. <u>Moore</u>, 41 Fed. Cl. at 399.

Defendant responds that plaintiffs' claim of typicality fails for four reasons. Defendant first argues that plaintiffs appear to take the position that the scope of the property rights now held by the United States may require examination of the original deeds by which plaintiffs' predecessors in interest conveyed property interests to Hidalgo County, and that if so, plaintiffs have not shown that their deeds are typical of the deeds of the potential class members. <u>See</u> Def.'s Resp. 14.

Defendant provides no authority for its position that the deeds of the class representatives must be like those of the potential class members, and the court is aware of none. In fact, review of class action rails-to-trails cases shows that this court routinely reviews multiple easements in its determination of liability. <u>See, e.g.</u>, <u>Haggart v. United States</u>, 116 Fed. Cl. 131, 140 (2014) ("For each of the categories within the two subclasses, the court had to determine whether the railroads had acquired easements or fee simple estates under Washington state law, entailing a deed-by-deed inquiry. The court held that most categories of deeds showed that the railroad merely held an easement as opposed to a fee.") (citing <u>Haggart v. United States</u>, 108 Fed. Cl. 70, 82, 89-94 (2012) (footnote omitted); <u>McClurg Family Farm, LLC v. United States</u>, 115 Fed. Cl. 1, 6 (2014) ("As to many of the parcels at issue, the parties focus on the same deeds and/or conveyance documents. Questions involving the interpretation of these documents must be resolved by reference to state law . . . .").

Defendant's next two arguments are that the number of acres in the parcels of land owned by named plaintiffs may not be typical of the proposed class, and that differences exist as to the dates of the alleged taking. Def.'s Resp. 14-15. Plaintiffs reply that each argument could be raised in any class action for a physical taking, as "[o]wnership interests, land size, and dates of taking are often dissimilar amongst class members," but such differences do not preclude this court from certifying such classes. Pls.' Reply 16.

Plaintiffs are correct. The size of individual properties varies in every takings case, and has never defeated class certification. Likewise, multiple dates of alleged taking have never served to defeat class certification. <u>See, e.g.</u>, <u>Janssen</u>, 2010 WL

697343, at *1 (a rails-to-trails case in which the government issued multiple NITUs,[8] thereby creating various dates of alleged taking among class members).

Finally, defendant points to plaintiffs' assertion that gates in the fence allow some, but not all, plaintiffs access to the land on the other side of the fence.  Def.'s Resp. 15 (citing Pls.' Mot. 21).  Defendant does not indicate, however, how the presence or absence of gates would be relevant to plaintiffs' claim that defendant's structure exceeds the scope of its easements.  Defendant's argument on this point is unpersuasive. "[T]ypicality may be satisfied even if some factual differences exist between the claims of the named representatives and the claims of the class, provided that the named representatives' claims share the same essential characteristics as the claims of the class at large."  Fisher v. United States, 69 Fed. Cl. 193, 200 (2006) (citing, inter alia, Piazza v. Ebsco Indus., 273 F.3d 1341, 1351 (11th Cir. 2001)).

Plaintiffs have shown that their claims are typical of those of the proposed class.

D.      Rule 23(a)(4) – Adequacy of Representation

The fourth and final prerequisite requires that "the representative parties . . . fairly and adequately protect the interests of the class."  RCFC 23(a)(4).  To this end, a "class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members."  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625-26 (1997) (quoting E. Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977)).

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."  Amchem Prods., 521 U.S. at 625; see also Barnes, 68 Fed. Cl. at 499 (stating that class members "must not have interests that are 'antagonistic' to one another") (quoting In re Drexel Burnham Lambert Grp., 960 F.2d at 291).  Potential conflicts include "differences in the type of relief sought, especially retrospective versus prospective relief; class representatives with current injuries representing a class that includes members who may experience injury in the future; and economic competitors within the same class."  1 Rubenstein, supra § 3:54.

Plaintiffs assert that they satisfy the adequacy requirement because they "have sued under the Tucker Act, [and] seek[] just compensation for a Fifth Amendment

---

[8]      The date on which the STB issues the NITU is the date of alleged taking.  See Ladd v. United States, 713 F.3d 648, 652 (Fed. Cir. 2013) ("In the context of Trails Act cases, the cause of action accrues when the government issues the first NITU that concerns the landowner's property.").

violation," just as the potential class members would.[9]  Pls.' Mot. 18.  Defendant does not contest this prong of the class certification analysis.  See Def.'s Resp. 18 (stating that plaintiffs failed to prove four of the five necessary factors, including "numerosity, commonality, typicality, and superiority," but not including adequacy of representation).

Defendant's lack of opposition notwithstanding, the court is obliged to satisfy itself that named plaintiffs are adequate representatives of the proposed class.  See 3 Rubenstein, supra § 7:19 ("If the defendant does not contest a prong of the certification analysis, . . . the court must nonetheless independently find that the plaintiff has satisfied that requirement.").

Plaintiffs propose that each of the six named plaintiffs serve as a class representative.  See Pls.' Mot. 17-18.  Plaintiffs, however, have failed to show that one of the named plaintiffs, specifically Bell Brothers, is a member of the class it seeks to represent.

Plaintiffs have included a list of the six named plaintiffs with their complaint, together with information about the land for which each was bringing its claim.  See Compl. ¶ 9 ("[P]articular interests owned by[p]laintiffs are more particularly described in the attached Exhibit 'A.'"); Ex. A.  Review of Exhibit A shows that Bell Brothers is represented by Weldon G. Bell.  Id.  When plaintiffs subsequently filed their motion for class certification, they included a list of landowners whom they assert are members of the proposed class.  Ex. G.  The court's review of Exhibit G does not show a parcel of land owned by Bell Brothers, or by Weldon G. Bell.[10]

Both exhibits A and G include a six-digit number used to identify each parcel of land—known as appraisal district numbers in Exhibit A and parcel numbers in Exhibit G.  Review of Exhibit A shows that plaintiffs assert that Bell Brothers own a parcel of land identified by appraisal district number 133740; but there is no parcel of land identified by this parcel number in Exhibit G.  As to the remaining plaintiffs, the parcels of land

---

[9]    Plaintiffs also argued that counsel was adequate.  Pls.' Mot. 18.  Appointment of class counsel is governed by Rule 23(g), not Rule 23(a)(4).  RCFC 23(g); see also Jenkins v. United States, 104 Fed. Cl. 641, 646 (2009) (considering the appointment of class counsel under Rule 23(g)).  As the court is not certifying the class, it is unnecessary to determine whether counsel is adequate under Rule 23(g)(1).

[10]    The court is aware that plaintiffs filed a motion for joinder of party plaintiff, in which they assert that G-M Bell Family Holdings, LLC is the current owner of property formerly owned by Bell Brothers.  See Pls.' Mot. Joinder ¶ 2, ECF No. 14.  Plaintiffs' pending motion for joinder does not explain, however, the omission of Bell Brothers from Exhibit G.  Nor does a review of Exhibit G show an entry for any parcel of land owned by G-M Bell Family Holdings, LLC.

included in Exhibit A are also included in Exhibit G.  Compare Ex. A, with Ex. G, at 1, 4-6.  The relevant information from both exhibits is excerpted in the chart below.

| Named Plaintiffs' Asserted Land Ownership | | |
|---|---|---|
| **Named Plaintiff(s)** | **Ex. G to Motion for Class Certification** | **Ex. A to Complaint** |
| | **Parcel Number(s)** | **Appraisal District Number** |
| Gerald E. Bell & Duane V. Bell | 222376 | 222376 |
| Joe Metz, individually | 664522 | 664522 |
| Joe Metz, as Trustee of the Waite Trust | 222375 & 121418 | 222375 |
| Neuhaus & Sons, a Texas General Partnership | 121378, 726043 & 198404 | 121378 |
| Bell Brothers, a Texas General Partnership | None | 133740 |

As plaintiffs failed to include Bell Brothers in their list of the sixty potential class members, Bell Brothers is ineligible to represent the class.  The remaining five named plaintiffs are each listed as owning one or more parcels of land, and thus are members of the proposed class each seeks to represent.

Defendant does not assert that the interests of the named plaintiffs are antagonistic to those of the proposed class, and nothing in the record suggests otherwise.  Plaintiffs seek monetary damages, the only relief available in this forum for the claim plaintiffs assert.  Almost all plaintiffs are owners of parcels of farmland or pasture, many of them small parcels of land.  Because it appears that most of the proposed class is engaged in farming their land, there is nothing in this record that suggests the type of intra-industry competition that could result in interests that are antagonistic of one another.

The court finds that five of the six named plaintiffs—Gerald E. Bell, Duane V. Bell, Joe Metz, individually, Joe Metz, as Trustee of the Waite Trust, and Neuhaus & Sons—satisfy the Rule 23(a)(4) criteria to serve as class representatives.

E.     Rule 23(b)(2) – United States Acted on Grounds Generally Applicable

In order to maintain a class, plaintiffs must show that "the United States has acted or refused to act on grounds generally applicable to the class."  RCFC 23(b)(2).

16

Plaintiffs assert that "the government affected all burdened landowners equally and simultaneously," when it built its structure on plaintiffs' property.  See Pls.' Mot. 19.  Defendant does not deny that its actions satisfy Rule 23(b)(2).

It is clear that defendant's action in this case satisfies Rule 23(b)(2).

F.      Rule 23(b)(3) – Common Questions Predominate and Superiority of Class Action

Plaintiffs must also show that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  RCFC 23(b)(3).

1.      Common Questions Predominate

"The issue of predominance is  . . . designed to determine whether the proposed class is 'sufficiently cohesive to warrant adjudication by representation.'"  Singleton v. United States, 92 Fed. Cl. 78, 84 (quoting Amchem Prods., 521 U.S. at 623-24).

Plaintiffs assert that the ownership issues in this matter will be resolved by "reviewing the real estate records," and that plaintiffs will be able to do so "simply and quickly without undermining predominance."  Pls.' Mot. 20.

Defendant argues that plaintiffs have failed to show predominance because: (1) each plaintiff would have to demonstrate ownership by providing a deed or some other document; (2) the exact date of the alleged taking would have to be established to determine both standing and damages, and will vary among plaintiffs; (3) the original easements granted by each plaintiff's predecessor in interest to Hidalgo County might vary in their terms, and; (4) if plaintiffs prevail on liability, the damages calculation would need to be property specific.  Def.'s Resp. 9-14.

Defendant is correct that each proposed plaintiff would have to show ownership of the property in order to join the class.  This is true, however, in any takings case, including the numerous rails-to-trails class action matters adjudicated in this court, and such a requirement has never prevented certification.  See e.g., Haggart, 108 Fed. Cl. at 84 ("[P]laintiffs must . . . present the original deeds granting a right-of-way to the predecessor railroad and the deeds that show plaintiffs owned the property abutting the right of way at the time the NITU was issued.").

Defendant is also correct that the date of the alleged taking might vary, but defendant is not entirely correct in its assertion that the exact date of the alleged taking

must be determined for every property to assess standing to participate in the class.[11]  See Def.'s Resp. 12.  At the time of briefing, the parties asserted that the date of the alleged taking for each property occurred sometime in 2008, 2009, or 2010.  Id.; Pls.' Mot. 8.  For any property for which there was no change in ownership during the three-year period from January 1, 2008 to December 31, 2010, determination of the exact date of the alleged taking will be unnecessary for the owner to join the class—because there was only one owner throughout the entire period during which the alleged taking could have occurred, and that owner has standing regardless of the exact date of the alleged taking.  For those properties that changed hands during the relevant three-year period, determination of the exact date of the alleged taking will only be necessary if the date on which the property was sold took place during the approximate time of the alleged taking.  For example, if the parties agree that the alleged taking occurred sometime between January 1, 2008 and March 31, 2008, determination of the exact date of the alleged taking will be necessary only if the property changed hands during this three-month period, but otherwise it will not.  In the court's view, nothing in defendant's argument supports a finding that the question of the dates of the alleged taking predominates in this matter.

The court has addressed already in this opinion defendant's argument regarding the possibility the court would have to review multiple easements.  See supra Part III.C (first argument).  This argument by defendant is no more persuasive in consideration of predominance, than it was in the court's consideration of typicality.

Finally, as to defendant's argument that any damages determination would need to be individualized, and that the exact date of the alleged taking would have to be determined to calculate damages, Def.'s Resp. 12-13, defendant is correct.  But, numerous courts have found that the need for individualized damages does not defeat class certification.  See, e.g., Geneva Rock Prods, 100 Fed. Cl. at 789 (finding that the determination of compensation by individualized proof did not preclude common issues from predominating); Haggart, 89 Fed. Cl. at 533-34 ("[D]ifferences in the amount of potential damages . . . will not alone prevent class certification.").  In fact, the Supreme Court recently recognized that claims with individualized damages, such as this one, are properly brought under Federal Rule 23(b)(3), stating:  "[W]e think it clear that individualized monetary claims belong in Rule 23(b)(3)" classes, rather than classes certified under either Rules 23(b)(1) or 23(b)(2).  Wal-Mart, 131 S. Ct. at 2558.

The court is satisfied that the differences between the potential class members does not disturb the predominance of the common legal issue.

---

[11]    Defendant's argument regarding the necessity for the exact date of the alleged taking to determine damages is considered in tandem with its argument about the property specific nature of the damages.

2.      Superiority of Class Action

Rule 23(b)(3) requires the court to consider whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[12]  In doing so, the rules provide three factors for the court's consideration:

> (A) the class members' interests in individually controlling the prosecution of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by class members;
> (C) [not used]; and
> (D) the likely difficulties in managing a class action.

RCFC 23(b)(3)(A)-(D).

These factors represent a non-exhaustive list of factors for the court's consideration.  See FRCP 23(b)(3) advisory committee's note to 1966 amendment ("Factors (A)–(D) are listed, non-exhaustively, as pertinent to the findings."); Amchem Prods., 521 U.S. at 615-16 ("Rule 23(b)(3) includes a nonexhaustive list of factors pertinent to a court's 'close look' at the predominance and superiority criteria").

a.      Rule 23(b)(3)(A) – Individual Interests in Controlling the Prosecution of Separate Actions

Courts may consider two aspects of potential class members' claims in determining whether individuals are likely to want to conduct separate lawsuits, namely the cohesion of the class and the size of the individual claims.  Either "the class may have a high degree of cohesion and prosecution of the action through representatives would be quite unobjectionable, or the amounts at stake for individuals may be so small that separate suits would be impracticable."  2 Rubenstein, supra § 4:69 (quoting FRCP 23 advisory committee's note to 1966 amendment, 39 F.R.D. 69, 104 (1966)); see also supra Part III.A.1 (finding that the size of the individual claims is a consideration appropriate under Rule 23(b)(3)(A)).

---

[12]      "There are several other methods of adjudicating the claims of multiple individuals arising from the same course of conduct: the permissive joinder of parties under RCFC 20; the filing of a[n in]directly related case under RCFC 40.2[b]; and consolidation under RCFC 42(a).  Procedurally, RCFC 20 requires a motion to amend the complaint to join new plaintiffs, while RCFC 40.2[b] and RCFC 42(a) require the filing of separate complaints."  Gross v. United States, 106 Fed. Cl. 369, 383 n.13 (2012).

Cohesion is found when "claims [are] so closely related to the claims of others that litigation by others will achieve their ends without the need for their involvement." 2 Rubenstein, supra § 4:69. In this case, the claims of the potential class members are identical to those of the named plaintiffs.

The size of the individual claims considers the amount of possible damages, should plaintiffs prevail. E.g., Wright et al., supra, §1780. Plaintiffs argue that because most of the potential class members have small claims, individual interest in control of this litigation is not a concern. Pls.' Mot. 22-23. According to plaintiffs, the majority of the potential class members own parcels of land of no more than five acres, the alleged "taking is [of] even less [acreage] . . . [and] litigation costs in the individual case[s] [would] exceed damages to some of the properties." Id. at 23.

Defendant asserts that its review of Exhibit G shows that only 26 parcels of land are "identified as being five acres or less in size," out of a total of 76 parcels of land at issue in this matter. Def.'s Resp. 15 n.8.

The court's review of Exhibit G shows that 26 parcels (34%) are listed as being no more than 5 acres. Ex. G. Further review shows that 49 parcels (64%) are no more than 20 acres, and that all but 7 parcels (91%) include fewer than 100 acres. Ex. G. Thus, while defendant's tally is correct, plaintiffs' assertion that the majority of potential class members are owners of small parcels of land is a fair characterization on the whole.

The court notes, however, that two of the potential class members are national non-profit organizations that own preserves—The Nature Conservancy in San Antonio and the World Wild Life Fund in Washington, D.C. See Ex. G, at 6. It is impossible to speculate whether either organization would be interested in controlling the litigation. They are, however, unlike the remaining fifty-eight potential class members, individuals or entities that own farmland or pastures.

Plaintiffs offered no estimate as to the likely monetary value of potential class members' claims. But, as other courts considering similar takings claims have found, such estimates are unnecessary. See, e.g., Geneva Rock Prods., 100 Fed. Cl. at 788 (finding, in a rails-to-trails case, that where most of the proposed class holds a relatively small portion of the land subject to the alleged taking, "the costs of litigating a takings claim can easily exceed the just compensation due").

Likewise, each proposed plaintiff here owns only a small part of the approximately 22-mile stretch of land upon which plaintiffs base their claims, thereby limiting the size of any recovery by each individual. The record supports plaintiffs' assertion that the claims of most potential class members, if not all, are small claims.

Defendant disagrees that the possible recoveries by the individual plaintiffs would be consumed by litigation costs, pointing out that plaintiffs have requested reimbursement of their attorneys' fees and litigation costs under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (URA), 42 U.S.C. § 4654(c) (2012).  Def.'s Resp. 17 (citing Compl. ¶ 4).

The URA provides reasonable attorneys' fees and costs only if a plaintiff is <u>successful</u> in securing a judgment against the United States.  42 U.S.C. § 4654 ("The court rendering a judgment for the plaintiff . . . shall determine and award . . . reasonable attorney, appraisal, and engineering fees, actually incurred because of such proceeding."). It is also not uncommon for counsel to negotiate a fee to be <u>the greater</u> of either a percentage of plaintiff's recovery, or the URA fees.  <u>See, e.g.</u>, <u>Thomas v. United States</u>, 121 Fed. Cl. 524, 527 (2015) ("[C]lass counsel would be paid a contingency fee of 35% of the total recovery or attorneys' fees pursuant to the URA, whichever amount was greater."); <u>Sutton v. United States</u>, 120 Fed. Cl. 526, 528 (2015) (same).  Accordingly, even a successful plaintiff might spend part of its recovery on attorneys' fees and costs. But, the fact that successful plaintiffs would receive reasonable attorneys' fees under 42 U.S.C. § 4654 does not serve to defeat class certification.

The court finds no evidence in the record to suggest that class members would be interested in controlling their own litigation.

b.      Rule 23(b)(3)(B) – Extent and Nature of Prior Litigation

The court must consider "the extent and nature of any litigation concerning the controversy already begun by class members."  RCFC 23(b)(3)(B).  This factor provides another means of assessing individual plaintiff's interest in controlling their own litigation.  "[I]f individuals have not filed other suits, they [would] appear to have little interest in pursuing individual litigation, and hence, a class action [would] likely be superior."  2 Rubenstein, <u>supra</u> § 4:70.

Plaintiffs represent that no other potential class members have filed an individual action.  Pls.' Mot. 23.  Defendant says nothing to the contrary in its discussion of superiority under Rule 23(b)(3).  <u>See</u> Def.'s Resp.  16-18.

The court is satisfied that there is no other pending litigation regarding this matter.

c.      Rule 23(b)(3)(D) – Likely Difficulties in Managing the Class

This final factor requires the court to consider "the likely difficulties in managing a class action."  RCFC 23(b)(3)(D).  Manageability "encompasses the whole range of practical problems that [might] render the class action format inappropriate for a particular suit."  <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 164 (1974).  "[C]ourts

consider . . . not whether a class action is manageable in the abstract but how the problems that might occur in managing a class suit compare to the problems that would occur in managing litigation without a class suit."  2 Rubenstein, supra § 4:72.

Plaintiffs assert that the proposed class is manageable because the members "are reasonably identifiable, the ownership interests are a matter of simple review, this court and federal district courts have presided over similar class actions, and the Court's ADR program is available to help resolve disputes."  Pls.' Mot. 23.  Defendant addressed this factor by arguing that a class action would provide no efficiencies beyond those afforded by Rule 20 joinder.  See Def.'s Resp. 16-17.  Defendant, however, does not suggest that managing a class action would present difficulties not present in other forms of litigation, and the court is aware of none.

>       d.       Comparison with Other Available Methods of Adjudication

The ultimate question under Rule 23(b)(3) is whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  RCFC 23(b)(3) (emphasis added).  The list of non-exhaustive factors set forth for the court's consideration—specifically, the individual interest in control of the litigation, the prosecution of other litigation, and the management difficulties posed by a class action— inform but do not dispose of the question.  Rather, as contemplated by the language of the rule, the court must conduct a comparative assessment between the class action format and other adjudication methods.

Here, plaintiffs appear to assume that there is no other available method of adjudication.  Pls.' Mot. 23 ("Denying [potential class members] class certification would be the equivalent of refusing them their opportunity to exercise their constitutional rights.")  But, as previously discussed, the number of potential class members in this case is not so large as to make Rule 20 joinder impracticable.  See supra Part III.A.

Plaintiffs also appear to equate the small claim size of potential class members with an entitlement to class certification.  See Pls.' Mot. 15 (arguing that Rule 20 joinder is impracticable where "many properties are small, rural residential and/or agricultural, and located in economically challenged areas, not suggesting 'economically powerful parties'").  Yet, while it is clear that the size of the individual claims is a consideration in evaluating Rule 23(b)(3), nothing in Rule 23 suggests that the mere existence of small claims is sufficient to establish the superiority of a class action, particularly where joinder is an available option.

Plaintiffs go on to compare a class action with the most burdensome, and most unlikely, alternative method of adjudication—that of each potential class member filing an individual action.  See Pls.' Reply 19 ("Instead of having more than sixty different cases with multiple counsel and experts assigned to different trial judges, there will be

only one action to resolve the common factual and legal questions.")  Plaintiffs declined to address, however, the circumstance in which additional plaintiffs might join the existing action, as described in <u>Rasmuson</u>.  <u>See</u> 7th Am. Compl., <u>Rasmuson</u>, No. 09-158 (Fed. Cl. Oct. 6, 2010), ECF No. 46 (listing approximately sixty named plaintiffs).

On balance, plaintiffs' claim of superiority fails because other methods for fairly and efficiently adjudicating the controversy are available, and plaintiffs have not shown that a class action is superior to them.  <u>See, e.g.</u>, <u>Jaynes</u>, 69 Fed. Cl. at 459-60 (finding that plaintiffs with a proposed class of up to 258 potential class members failed to show superiority, where Rule 20 joinder was available, and "[t]here is little, if anything, to be gained in terms of efficiency or the avoidance of multiple lawsuits by certifying the proposed opt-in class.")

The court finds that plaintiffs have not satisfied Rule 23(b)(3).

IV.    Conclusion

Plaintiffs have failed to satisfy the requirements of Rules 23(a)(1) and 23(b)(3).  For these reasons, plaintiffs' motion for class certification is **DENIED**.

According to the Scheduling Order now in place, the parties are directed to file a joint status report (JSR) to include (1) a proposed discovery plan, and (2) a proposed schedule for the filing of dispositive motions, if desired, by **Monday, November, 2, 2015**.  Scheduling Order, ECF No. 20.

The parties are also directed to address in the JSR how they wish to proceed with Plaintiffs' Motion for Joinder of Party Plaintiff.  Pls.' Mot. Joinder, ECF No. 14.  As of the filing of plaintiffs' reply, the date of the alleged taking for the relevant property had not been fixed yet, and thus plaintiffs were unsure as to which entity, Bell Brothers or its successor, G-M Bell Family Holdings, LLC, owned the property at the time of the alleged taking.  Pls.' Reply Joinder 1, ECF No. 18.  The court is unable to resolve plaintiffs' motion without this information.

IT IS SO ORDERED.

s/ Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Chief Judge